19-3624-cv
Petronio v. Nat'l R.R. Passenger Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY  ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 2nd day of December, two thousand twenty.

Present:     JON O. NEWMAN,
             ROSEMARY S. POOLER,[1]
                         *Circuit Judges*.

_____

STEVEN PETRONIO,

                    *Plaintiff-Appellant*,

         v.                                          19-3624-cv

NATIONAL RAILROAD PASSENGER CORPORATION, STEVEN JOHN COLLINS,

                    *Defendants-Appellees*.

_____

Appearing for Appellant:     Stephen J. Fitzgerald, Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C., New Haven, CT.

                             Charles C. Goetsch, New Haven, CT (*on the brief*).

Appearing for Appellee:      William G. Ballaine, Landman Corsi Ballaine & Ford P.C. (Sophia Ree, Edumin Corrales, *on the brief*), New York, N.Y.

_____

[1] Circuit Judge Peter W. Hall, originally a member of the panel, is currently unavailable, and the appeal is being adjudicated by the two available members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

Appeal from the United States District Court for the Southern District of New York (Rakoff, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Steven Petronio appeals from the October 2, 2019 judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*) granting summary judgment to Defendants-Appellees National Railroad Passenger Corporation ("Amtrak") and Steven J. Collins in Petronio's action under the whistleblower-protection provisions of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20109, *et seq*. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review *de novo* the award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks, brackets, and citation omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the FRSA, a "railroad carrier engaged in interstate or foreign commerce . . . shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for . . . reporting, in good faith, a hazardous safety or security condition." 49 U.S.C. § 20109(b)(A). "To establish a <u>prima</u> <u>facie</u> case of retaliation under the FRSA, an employee must show by a preponderance of the evidence that: (i) the employee engaged in protected activity as defined in the FRSA; (ii) the employer knew that the employee had engaged in protected activity; (iii) the employee suffered an unfavorable personnel action; and (iv) the protected activity was a contributing factor in the unfavorable action." *Lockhart v. MTA Long Island R.R.*, 949 F.3d 75, 79 (2d Cir. 2020).

Petronio contends on appeal that the district court erred in concluding that he failed to make out a prima facie showing that his protected activity—sending several e-mails to Amtrak management officials requesting trainings and reporting safety concerns—was a contributing factor in Amtrak's termination of his employment. He argues primarily that the district court erred by (1) ignoring circumstantial evidence that his safety reports were a contributing factor to his termination; (2) rejecting his "cat's paw" theory of liability that would charge Amtrak with Assistant Division Engineer John Collins's alleged bias against Petronio because of his safety reports; and (3) allowing Amtrak to justify Petronio's termination based on his violation of Amtrak's workplace policies that incorporated subjective criteria.

We conclude that the district court correctly granted summary judgment to Appellees. There is no evidence that the Amtrak officers who decided to charge, convict, and terminate Petronio for his violation of Amtrak's workplace policies were aware of Petronio's safety reports. Petronio's purported circumstantial evidence that his safety reports were a contributing factor to his termination—such as temporal proximity between the safety reports and his termination, or alleged hostility to his safety reports from Amtrak employees without decision-making power—cannot overcome this fatal defect. Accordingly, no reasonable factfinder could

find that a preponderance of the evidence established that Petronio's protected activity was a contributing factor to his discharge.

We further agree with the district court that the cat's paw theory is inapplicable to hold Amtrak liable here. In a cat's paw case, a plaintiff can succeed "even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the decisionmaking process." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (internal quotation marks, brackets, citation omitted). Petronio argues that Collins played such a "meaningful role" in his termination, citing Collins's suspension of Petronio, his role in initiating disciplinary charges, and his testimony at Amtrak's disciplinary hearing. The record is clear that Susan Obey, the charging officer, was responsible for filing the charges. After Collins received a report of misconduct, Collins consulted with Obey, and then—acting on Obey's advice—collected statements from witnesses and met with Petronio on November 7 about the allegations, before charges were filed. While Collins testified about Petronio's conduct in this November 7 meeting at Petronio's disciplinary hearing, Amtrak's decisionmakers relied also on the testimony of multiple other witnesses in concluding that Petronio had violated workplace policies.

Assuming based on the foregoing that Collins played a meaningful role in the decisionmaking process, we nevertheless conclude that no reasonable jury could find that the preponderance of the evidence established that the safety reports were a contributing factor in Collins's actions in connection with the disciplinary proceedings. There is no evidence that Collins took any actions adverse to Petronio until Collins received reports of Petronio's potential violations of Amtrak's workplace policies—already one month after Petronio sent his final safety report to Collins.

And though Petronio argues that the evidence demonstrates Collins's bias against him, this argument is unavailing. Petronio testified that he and Collins never discussed the safety reports, let alone in a manner that demonstrates bias. Petronio makes much of Collins's testimony that "since [he] was fairly new at Amtrak, [he] thought it was odd that a pipefitter would write an email to the deputy division engineer regarding a safety concern and that it wasn't brought up to the foreman, the assistant supervisor, the supervisor, the safety liaisons, somebody of that magnitude . . . ." App'x at 1865. But this testimony does not show bias or that Petronio's reports angered Collins; at most it shows that Collins thought Petronio's conduct was unusual because he did not escalate safety concerns through Amtrak's chain of command.

Petronio's allegation that Collins was hostile during the November 7 meeting is also insufficient to show bias. The meeting, which did not discuss the safety reports, concerned a potential threat that Petronio made against a co-worker that was independently reported to Collins by two other Amtrak employees. In light of these circumstances, the mere fact that Collins knew of Petronio's safety reports is insufficient on its own to establish that Petronio's protected activity contributed to Collins's alleged hostility in the meeting, or the subsequent actions he took in response to the meeting. In short, though Collins was aware of Petronio's safety reports, no reasonable jury would find that the preponderance of the evidence established that this knowledge influenced Collins in connection with the disciplinary proceedings.

We have considered the remainder of Petronio's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk